UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KENYA BROWN,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHNSON AND JOHNSON PHARMACEUTICAL JANSSEN PHARMACEUTICAL, et al.,<br><br>    Defendants. | No. 3:12-cv-01381 (MPS) |

**MEMORANDUM OF DECISION**

Plaintiff Kenya Brown brings this action against Defendants Johnson & Johnson and Janssen Pharmaceuticals, Inc., alleging violations of the Connecticut Product Liability Act ("CPLA"), Conn. Gen. Stat. § 52–572m, *et seq.* Specifically, Plaintiff alleges that he suffered injuries as a result of his use of the prescription anti-psychotic drug Risperdal. Defendants have moved for summary judgment [Dkt. # 192]. For the reasons that follow, the Court GRANTS Defendants' motion.

**I.     BACKGROUND**

    **A.  Factual Background**

Plaintiff, Kenya Brown ("Mr. Brown") brought this action against Johnson & Johnson ("J&J") and Janssen Pharmaceuticals, Inc. ("Janssen") (collectively, "Defendants"), alleging product liability, negligence, strict liability, breach of warranty, defective products, and emotional distress. (Amend. Compl. [Dkt. # 72] at 1.) Mr. Brown seeks a total of $13 million in damages from the Defendants under the Connecticut Product Liability Act ("CPLA"), Conn. Gen. Stat. § 52–572m, *et seq.* (Pls.' L.R. 56(a)(2) Stmt. [Dkt. # 202] ¶ 10.)

Mr. Brown is a Connecticut resident and current inmate at the MacDougall-Walker Correctional Institution in Suffield, Connecticut. (Amend Compl. [Dkt. # 72] at 2.) During the events described in his Amended Complaint, Mr. Brown also resided at Northern Correctional Institution and Garner Correctional Institution. (*Id*.) Mr. Brown alleges that the Connecticut Department of Corrections prescribed the anti-psychotic drug Risperdal, and gave the drug to him orally and by injection. (Pls.' L.R. 56(a)(2) Stmt. [Dkt. # 202] ¶¶ 1-2.) Mr. Brown's medical records suggest that, in addition to other medications, he began taking Risperdal in February 2008 and continued until May 2011. (Pl.'s Reply Br. Ex. E [Dkt. # 202-2] at 13-36.)

Mr. Brown alleges that Defendants 1) manufactured, marketed, and processed Risperdal under defective conditions that were unreasonably dangerous to him; 2) failed to properly design, test, and prepare Risperdal so that it would be safe and effective; and 3) failed to warn physicians that Risperdal caused irreversible breast growth and lactation, sexual dysfunction, and damage to the pituitary gland. (Amend. Compl. [Dkt. # 72] at 8.) Mr. Brown alleges that Defendants' conduct caused him to suffer from gynecomastia (breast enlargement) requiring surgery to remove both breasts, pituitary damage, sexual dysfunction, and a decrease in the hormone testosterone. (*Id.* at 4.) These injuries caused him mental anguish and distress. (*Id.*)

According to Defendants, both are U.S. corporations licensed to do business in Connecticut. (Defs.' Answer [Dkt. # 193] at 2.) Both J&J and Janssen are citizens of New Jersey, and Janssen is also a citizen of Pennsylvania. (Notice of Removal [Dkt. # 1] at 5.) Janssen is a wholly owned subsidiary of J&J (Defs.' Corporate Disclosure Statement [Dkt. # 6] at 2) that manufactures, processes, markets, distributes, and sells pharmaceutical products, including Risperdal, and "J&J is a holding company that does not manufacture, process, market, distribute or sell any products or services." (Defs.' Answer [Dkt. # 193] at 2.)

### B. Procedural Background

Mr. Brown, acting *pro se*, filed his original complaint on August 29, 2012 in the Superior Court of the State of Connecticut, Judicial District of Hartford. On September 26, 2012, Defendants removed the action to federal court based on diversity jurisdiction. (Notice of Removal [Dkt. # 1].) In July 2013, Defendants filed a motion to dismiss [Dkt. # 73] on grounds of improper service and failure to plead a proper claim under the CPLA. The Court construed Plaintiff's Amended Complaint as asserting a single count under the CPLA, and denied Defendants' motion to dismiss on November 19, 2013 [Dkt. # 99].

The Court's November 19, 2013 scheduling order [Dkt. # 98] set a deadline of March 15, 2014, by which Mr. Brown was required to disclose his expert witnesses. In January 2014, Mr. Brown filed several motions, including a motion for the Court to appoint him expert witnesses [Dkt. # 172], and a motion for appointment of counsel [Dkt. # 174]. In Mr. Brown's motion for appointment of expert witnesses, he stated that his "case will be lost at Summary Judgment or trial for lack of expert evidence," and "appointment of counsel is needed as well in order to make favorable the claims and theories set forth." (Pl.'s Motion to Appoint Expert Witness [Dkt. # 172] at 2.) Essentially, Mr. Brown argued that it was too difficult and expensive for him to obtain an expert by himself. (*Id*.) Defendants objected to Plaintiff's motion [Dkt. # 183]. In Order 186 on February 18, 2014, this Court denied Plaintiff's motion to appoint expert witnesses—as well as forty-two of Mr. Brown's other pending motions—without prejudice. The Court ordered that Mr. Brown "not file any additional motions concerning any subject matter until counsel is appointed in this matter or until a determination is made that counsel cannot be obtained." On March 28, 2014, Defendants moved for summary judgment, arguing that expert testimony is required to establish defect and causation and that Mr. Brown had failed to disclose any experts

by the deadline of March 15, 2014, to support his contentions that Risperdal was defective and caused his injuries. Therefore, Defendants argued, the Court should grant Defendants summary judgment. (Defs.' Mem Supp. Mot. Summ. J. [Dkt. # 192-1] at 1-2.) Mr. Brown opposed Defendants' motion for summary judgment on April 21, 2014, and argued that the Court should appoint him an expert witness because there exists "a prejudice for a mental health patient from prison to attempt to a[c]quire [a] psychiatrist as [an] expert witness." (Pl.'s Opp. Br. [Dkt. # 202] at 25.)

The Court appointed counsel for Mr. Brown on two occasions. On April 10, 2014, the Court issued an order appointing pro bono counsel for Mr. Brown for settlement purposes only [Dkt. # 194], and in doing so, granted Mr. Brown's motion to appoint counsel.  The Court referred the case to Magistrate Judge William Garfinkel for settlement [Dkt. # 195], but the case did not settle, and the Court issued an order [Dkt. # 208] granting the pro bono attorneys' motions to withdraw on July 1, 2014. After examining the parties' summary judgment papers, the Court issued an order [Dkt. # 210] on September 25, 2014 appointing pro bono counsel to Mr. Brown so that counsel could consult with Mr. Brown, review the file, and retain an appropriate expert, as the Court believed that appointed counsel would be in a better position than the Court itself to identify and retain an appropriate expert.[1] The Court convened a telephonic status conference on October 16, 2014, and set a new deadline of December 15, 2014,

---

[1] Fed. R. Evid. 706 gives the Court broad discretion to appoint its own expert in compelling circumstances. *Gold v. Dalkon Shield Claimants Trust*, No. B-82-383 (EBB), 1998 WL 351466, at *1 (D. Conn. June 3, 1998). "[T]he Court considers such factors as the complexity of the matters to be determined and the Court's need for a neutral, expert view. The appointment of an expert witness pursuant to Rule 706 is not intended to aid litigants, but rather to aid the Court, through the services of an impartial expert, in its assessment of technical issues. The Court should bear in mind the substantial expense that defendants may have to bear if the Court appoints an expert in a case where . . . one of the parties is indigent. Considering the large number of cases involving indigent prisoners, and the substantial costs that may result, the Court's appointment of expert witnesses should be used sparingly." *Dowdell v. City of Rochester*, No. 11-CV-6493G, 2013 WL 5504145, at *2 (W.D.N.Y. Oct. 2, 2013) (internal quotation marks and citations omitted).

for Mr. Brown to disclose all experts. (Order [Dkt. # 213].) Mr. Brown failed to disclose any experts by December 15, 2014, however, and during another telephonic status conference held on December 18, 2014, Mr. Brown's counsel confirmed that he had not disclosed any experts and that Mr. Brown wanted the Court to rule on Defendants' original motion for summary judgment.

## II. STANDARD

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks and citation omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "[T]he court must assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal quotations and citations omitted).

## III. DISCUSSION

The Connecticut Product Liability Act ("CPLA") "provides the exclusive remedy against a seller of a defective product " *Sylvan R. Shemitz Designs, Inc. v. Newark Corp.*, 291 Conn. 224, 230 (2009); *see also* Conn. Gen.Stat. § 52–572m(b) (noting that the CPLA covers "all claims or actions brought for personal injury . . . caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, or labeling of any product.") To establish a claim under the CPLA, "a plaintiff must prove that: (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition." *White v. Mazda Motor of Am., Inc.*, 313 Conn. 610, 622 (2014) (internal quotation marks and citations omitted). "In a products liability action, the plaintiff must plead and prove that the product was defective and that the defect was the proximate cause of the plaintiff's injuries." *Haesche v. Kissner*, 229 Conn. 213, 218 (1994) (internal quotation marks and citations omitted). Defendants contend that, without expert testimony, Mr. Brown cannot prove the second and third elements—defect and causation—as a matter of law. The Court agrees.

"A product is defective when it is unreasonably dangerous to the consumer or user." *Sharp v. Wyatt, Inc.*, 31 Conn. App. 824, 833 (1993). "[A]n ordinary consumer may, under certain circumstances, be able to form expectations as to the safety of a product." *White v. Mazda Motor of Am., Inc.*, 139 Conn. App. 39, 49 (2012). When a product is complex, however, "an ordinary consumer may not be able to form expectations of safety." *Koger v. Synthes N. Am., Inc.*, No. 3:07-CV-01158 WWE, 2009 WL 5110780, at *2 (D. Conn. Dec. 17, 2009). Prescription drugs are complex products made up of chemical compounds, and whether a

prescription drug meets an ordinary consumer's expectations is outside the scope of common knowledge and experience of judges and jurors. *Kost v. Avon Products, Inc*., No. 3:11-CV-00914 MPS, 2013 WL 1397721, at *3 (D. Conn. Apr. 5, 2013). Connecticut courts consistently hold "that expert testimony is required when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors." *White v. Mazda Motor of Am., Inc.*, 139 Conn. App. 39, 49 (2012) (internal quotation marks and citations omitted). Thus, without expert testimony, Mr. Brown cannot prove that Risperdal is defective.

Whether Risperdal caused Mr. Brown's alleged injuries also requires expert testimony. The effects of Risperdal on the human body when ingested and the causes of Mr. Brown's alleged medical ailments—including gynecomastia, pituitary damage, hormone fluctuations, and sexual dysfunction—are outside of the ordinary knowledge and experience of judges or jurors, requiring medical expertise. In *Fane v. Zimmer, Inc.*, 927 F.2d 124, 131 (2d Cir. 1991), the Court of Appeals affirmed the district court's directed verdict in favor of a medical device manufacturer because it found that whether a surgically-implanted medical device caused a bone fracture was a medical question beyond the scope of an ordinary person and required expert testimony. The surgically-implanted medical device in *Fane* was not something with which an ordinary person comes in contact, and there was at least one other possible cause of the plaintiff's injuries. *See also Gold v. Dalkon Shield Claimants Trust*, No. B-82-383 (EBB), 1998 WL 351456, at *3 (D. Conn. June 15, 1998) ("without a proffer of expert medical testimony as to causation to link the defect to the injury, a reasonable jury could not find that the plaintiff has proved that the defect caused her specific injuries") *aff'd,* 189 F.3d 460 (2d Cir. 1999).

Like the surgically-implanted medical device in *Fane,* Risperdal is not a compound with which the ordinary person comes into contact. Moreover, there are other possible causes of Mr.

7

Brown's alleged injuries. For example, Dr. Carl Gjertson of the University of Connecticut Medical Group saw Mr. Brown on June 12, 2012, for erectile dysfunction, and noted that "there are many possible causes" for Mr. Brown's erectile dysfunction, "including his medications as well as his hypertension and his psychiatric disease as well." (Pl.'s Reply Br. Ex. I [Dkt. # 202-3] at 2.) Thus, even if the Court could find that Risperdal was defective, without expert medical testimony causally linking Risperdal to Mr. Brown's injuries, a reasonable jury could not find that it is more probable than not that Risperdal *caused* Mr. Brown's injuries in this specific case. *See Gold,* 1998 WL 351456, at *3.

Because expert testimony is necessary to establish the essential elements of defect and causation, and because Mr. Brown has failed to disclose any experts, he is unable to establish a claim under the CPLA.

## IV.     CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants' Motion for Summary Judgment. The Clerk is directed to close this case.

                                         IT IS SO ORDERED.

                                         /s/
                                         Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                January 16, 2015